UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

            Plaintiff,

        v.                                    Case No. 23-cv-0568-bhl

JOHN DOE #1,
RANDALL HEPP,
LT. FISHER,
OFFICER CONRAD, and
JOHN DOE #2,

            Defendants.

---

## SCREENING ORDER

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $0.91. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

2

According to Plaintiff, on July 7, 2022 at about 10:00 a.m., he was in his cell using the telephone when several inmates started threatening that if he did not give up the phone, they would get staff to open his door and they would beat him up. Plaintiff asserts that there is a camera outside his cell that is supposed to be monitored by officers. After a few minutes, the inmates allegedly unplugged the telephone and began to throw cups of urine on Plaintiff through his cell door. Plaintiff asserts that officers allowed this harassment "for quite some time." He further asserts that, although there was no reason for his door to be opened, the inmates "did have an unknown sgt. open [his] cell door against his consent." Plaintiff states that after the inmates entered his cell, hit him in the head, and slammed him into a table, they took the telephone and ran out of his cell, closing his door behind them. Dkt. No. 1 at 3-4.

According to Plaintiff, he was injured and in a lot of pain, but he could not call for help because his cell did not have an emergency call button. Plaintiff states that he had to wait until mealtime to ask for help, at which time he tried to inform Officer Conrad that he had been attacked and was hurt, but Conrad told him he could not deal with it right then because he had to serve meals. Conrad allegedly came back about 30 to 40 minutes later, but he told Plaintiff he had to deal with trays. Plaintiff asserts that he had to wait until the next day to turn in his complaint. Plaintiff states that he also collected DNA evidence, *i.e.*, urine, from a cup and papers that were by his cell door. Dkt. No. 1 at 4-7.

Plaintiff states that he gave his written complaint and the DNA evidence to an officer, and within an hour Lt. Fisher called to have Plaintiff brought out of his cell so his injuries could be photographed. Plaintiff states that he could not talk because the inmate in the cell next to his is the one who had ordered the other inmates to attack him, and he had also told Plaintiff that he would rape him and have him stabbed. Plaintiff states that Fisher photographed his injuries.

3

According to Plaintiff, after he told Fisher that urine had been thrown on him, Fisher agreed that Plaintiff should be tested for STDs and other diseases. Although Fisher informed Plaintiff he would receive medical attention that day, he did not take him directly to health services. Plaintiff asserts that he did not receive medical attention for nearly a month.

### THE COURT'S ANALYSIS

Plaintiff seeks to state a claim against the John Doe officer who "should have" been watching the video feed from the camera pointing in the direction of Plaintiff's cell. According to Plaintiff, this unknown officer violated the Eighth Amendment by failing to protect him from other inmates who allegedly harassed and attacked him. A prison official has a duty to protect a prisoner from objectively serious harm if he has actual knowledge of the impending harm. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Plaintiff fails to state a claim because he merely speculates that an officer observed inmates harassing and attacking him, and speculation is an insufficient basis to state a claim. *See Iqbal*, 556 U.S. at 678. The Court cannot reasonably infer that an officer observed the alleged attack and failed to respond based only on an allegation that a camera was pointing in the direction of Plaintiff's cell. And, even if an officer "should have" been monitoring the video feed of the area outside a locked, single-occupant cell, his or her failure to constantly do so would amount to negligence (if that), which is insufficient to state a constitutional claim. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

Nor does Plaintiff state a claim against the John Doe officer who allegedly opened Plaintiff's cell door, which allowed the inmates to enter and attack Plaintiff. Plaintiff does not allege that the officer who opened Plaintiff's cell door knew that the other inmates planned to attack him once the door was opened. The Court cannot reasonably infer from the mere fact that the officer opened the door that he or she "ha[d] actual knowledge of the impending harm." Thus,

4

as was the case with monitoring the video feed, opening Plaintiff's cell door amounted at most to negligence, which is insufficient to state an Eighth Amendment claim.

Plaintiff also fails to state claims against Conrad and Fisher based on allegations that they did not immediately get him medical attention when he demanded it. Plaintiff asserts that Conrad refused to interrupt his meal delivery duties to obtain medical help for him and that, while Fisher removed him from his cell to photograph his injuries, he did not immediately take him to health services. Although Plaintiff asserts that he was in a lot of pain after the attack, his injuries did not require emergency attention such that the officers were required to drop everything they were doing to assist Plaintiff. Plaintiff does not clarify whether he followed the institution's policies for requesting medical care, including submitting a health services request, nor does he explain why his decision not to follow policies would obligate Conrad and Fisher to obtain health care for him. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

In any event, because Conrad and Fisher are not health care providers and could not treat Plaintiff's injuries themselves, their failure to contact health services on Plaintiff's behalf merely delayed Plaintiff's access to medical treatment. But, "[i]t is not enough, however, simply to point to a delay, which may or may not reflect deliberate indifference." *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021). A delay in treatment is actionable only when it exacerbated a plaintiff's injury or unnecessarily prolonged his pain. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Here, Plaintiff alleges that he did not receive treatment until a month later (he does not specify what treatment he received). Thus, the Court cannot reasonably infer that the short delay caused by Conrad and Fisher's refusal to get him medical care when he demanded it harmed him, as he had to wait for a month to get treatment anyway. *See also Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (holding that the Constitution does not mandate immediate care). To the extent

5

Plaintiff believes health care providers did not provide him with timely or adequate treatment once they examined him, Conrad and Fisher are not liable for those decisions. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (holding that §1983 requires that a defendant be personally involved in an alleged deprivation to be liable).

Finally, Plaintiff fails to state a claim against Warden Randall Hepp based on allegations that he "has not updated the prison to have intercoms in the cells for emergenc[ies]." Dkt. No. 1 at 5. "A prison official can violate the Eight Amendment by failing to take reasonable steps to protect inmates from a known, substantial threat to their safety." *Steidl v. Gramley*, 151 F.3d 739, 740 (7th Cir. 1998) (citations omitted). But the official must have "actual knowledge" of a substantial risk of serious harm; failing to address a significant risk that he should have perceived but did not is not enough. *Id.* (citations omitted). The complaint suggests only that Hepp should have known or might have known that the lack of emergency call buttons in the cells could pose a risk of harm to inmates, but the Supreme Court has expressly rejected that such a suggestion is sufficient to state an Eighth Amendment claim. *See id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837-37 (1994)). As was the case with monitoring the video feed and opening the cell door, failing to perceive a risk that he perhaps should have perceived amounts to, at most, negligence, which is insufficient to state a constitutional claim.

Although the complaint fails to state a constitutional claim upon which relief can be granted, the Court will give Plaintiff an opportunity to file an amended complaint. Plaintiff should set forth his allegations in short and plain statements to ensure that the amended complaint can be understood by someone who is not familiar with the facts of his case. Plaintiff is advised that the amended complaint replaces the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will

6

screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this case based on Plaintiff's failure to state a claim in his original complaint.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **June 22, 2023**, Plaintiff may file an amended complaint if he believes he can cure the deficiencies identified in the screening order. If Plaintiff does not file an amended complaint by the deadline, the Court will dismiss this action based on his failure to state a claim in his original complaint. If Plaintiff desires to pursue negligence claims against Defendants, he may do so in state court.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $349.09 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Plaintiff is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will

7

scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on May 24, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
