UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

        Plaintiff,

        v.                                      Case No. 23-cv-0568-bhl

ROBERT DREHMEL,

        Defendant.

## DECISION AND ORDER

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, an inmate at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Robert Drehmel improperly opened Freeman's cell door, after which another inmate assaulted him. *See* Dkt. No. 10. On June 7, 2024, Drehmel moved for summary judgment. Dkt. No. 53. For the reasons explained below, the Court will deny Drehmel's summary judgment motion.

## BACKGROUND

At the relevant time, Freeman was incarcerated at Waupun Correctional Institution, a maximum security prison, where Drehmel worked as a correctional officer. According to Freeman, he was moved down the hall to a single cell on July 5, 2022 after complaining that his cellmate had threatened him. A couple days later, on July 7, 2022, Drehmel was working in the sergeant's cage, which is a secure room and the only place from where cell doors can be opened remotely. According to video evidence, at about 10:44 a.m., an inmate walked toward Freeman's closed cell door holding a towel that concealed a cup. The inmate opened Freeman's cell trap and

threw liquid into the cell. The inmate left and walked into another cell a few cells down from Freeman's. Less than a minute later, the inmate returned to Freeman's cell, pulled on the door handle and said something to Freeman before walking away. According to Freeman, at some point, the inmate told him he was going to get his door opened. At 10:46 a.m., the inmate again walked to Freeman's cell, poked his arm through the cell trap and walked away. The inmate returned yet again to Freeman's cell, tugged at a blue cloth through the cell trap and eventually let it go. He then grabbed a phone cord through the trap. The inmate and Freeman continued to talk through the door while the inmate held onto the cord. The inmate was visibly agitated. Eventually, the inmate threw the cord back into Freeman's cell and walked away. Dkt. No. 55 at ¶¶1-2, 5, 13-17; Dkt. No. 9 at 3, 6.

At 11:01 a.m., the inmate returned to Freeman's cell, and Freeman handed the inmate the phone cord through his cell trap. The inmate plugged the cord into an outlet in the ceiling and walked away. A few minutes later, at 11:04 a.m., the inmate returned to Freeman's cell and then left a moment later. A second unidentified inmate jogged down the hall and leaned over to say something to Freeman through his cell trap. The second inmate then jogged back in the direction he came from and leaned over to speak through a different inmate's cell trap. Shortly thereafter, the first inmate returned to Freeman's cell. He again tried the door handle and then looked down the hall in the direction of the second inmate. Freeman's cell door then slid open. The inmate entered Freeman's cell and remained there for less than a minute. Freeman asserts that the inmate hit him on the left side of his head and slammed him into the corner of a table, injuring his back and ribs. The inmate exited Freeman's cell at 11:06 a.m., taking the telephone with him and yelling at Freeman. Freeman followed the inmate to his cell door, yelling and pointing at the other inmate

2

and at his head, but the inmate pushed Freeman hard back into his cell, closed the cell trap and door, and walked away. Dkt. No. 55 at ¶¶17-23; Dkt. No. 9 at 8.

Drehmel has no recollection of opening Freeman's cell door, but he insists that no inmate convinced him to open Freeman's cell door so he could assault him. He states that he has never been and never could be persuaded by an inmate to open another inmate's door. Staff assigned to the sergeant's cage are not required to sign in and out, so there are no records of where Drehmel was during the twenty-minute period during which the inmate and Freeman interacted. Drehmel does not explain if other staff members had access to the sergeant's cage or if other staff members were authorized to open inmates' cell doors from the sergeant's cage. Nor does he explain why he would have opened Freeman's cell door for no reason. Finally, Drehmel does not explain whose responsibility it was to monitor the video feed of the area outside Freeman's cell, if it was common for the video feed to be unmonitored for extended periods of time, or if officers routinely opened inmates' cell doors remotely without first consulting the video feed. Dkt. No. 55 at ¶¶42-44; Dkt. No. 78 at ¶¶7-18.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth

3

specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Freeman asserts that Drehmel violated the Eighth Amendment when he opened his cell door, making it possible for another inmate to assault him. In order to hold Drehmel liable for failing to protect him, Freeman must show that Drehmel "knew of and disregarded an excessive risk to inmate health or safety. [H]e must show that [Drehmel] was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn that inference." *Moore v. Western Ill. Corr. Ctr.*, 89 4th 582, 591 (7th Cir. 2023) (citations omitted). A "generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* (citations omitted). "[T]o be guilty of deliberate indifference they must know they are creating a substantial risk of bodily harm." *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

Drehmel does not remember if he opened Freeman's cell door; he does not even remember if he was in the sergeant's cage during the twenty-minute period that Freeman and the other inmate interacted. The most Drehmel can muster is that he would never be persuaded by an inmate to open another inmate's cell, and even if he *did* open Freeman's door, such an action would amount only to negligence, which is insufficient for an Eighth Amendment claim. According to Drehmel, Freeman's claim "is one of only [a] general, theoretical risk because there are no facts that establish

4

that Drehmel was aware that plaintiff was at a heightened risk of violence from . . . other inmates." Dkt. No. 54 at 9.

Construing all reasonable inferences in Freeman's favor (which the Court must because he is the non-moving party), the Court concludes that Freeman has presented sufficient evidence from which a jury could reasonably conclude that Drehmel opened Freeman's door and was deliberately indifferent to the serious risk of bodily harm Freeman faced when he did so. Waupun is a maximum security prison that houses about a thousand inmates, more than 90% of whom have been convicted of violent crimes. *See* Waupun Correctional Institution fact sheet, https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/WaupunCorrectionalInstitution.aspx. Freeman explains that inmates returning to their cells from a pass must proceed directly to their cells and immediately lock in. He also explains that there was no reason for his cell door to be opened that day—he had no security passes that would have allowed him to be outside his cell and there is no intercom in his cell, so he had no opportunity to personally request that his door be opened. Dkt. No. 78 at ¶¶8, 21, 24. Also, video evidence demonstrates that for twenty minutes before his door was opened, an inmate interacted with him by throwing liquid (which Freeman believes was urine) through his cell trap, reaching into his cell trap, trying to pull a cloth and cord through his cell trap, and twice pulling on his door handle. The record also demonstrates that Drehmel—and apparently no one else—was assigned to sergeant's cage, at which there was a video feed of the hallway outside Freeman's cell and which was the only place from which Freeman's cell door could be remotely opened.

Drehmel has not shown that he did not open Freeman's cell door; indeed, he admits he does not remember if he did or not. Instead, he denies that he would have opened it at another inmate's request, asserting that he has never been persuaded by an inmate to open another inmate's

5

cell door. But Drehmel offers no explanation of why or how, at the precise moment another inmate was attempting to gain access to Freeman's cell, after several minutes of agitated confrontations outside Freeman's cell, the door was remotely opened. Nor does Drehmel explain how frequently during his shift he would leave the sergeant's cage, who (other than him) had authority to open inmates' cell doors remotely, under what circumstances an inmate's cell door would be opened, or why the door of an inmate who did not have a security pass would be opened while another inmate was standing outside his cell. Based on the evidence presented (and *not* presented) by the parties, a jury could reasonably conclude that Drehmel opened Freeman's cell door while knowing that doing so placed Freeman at a heightened risk of substantial injury from another inmate. Freeman asserts that once his door was opened, the other inmate entered his cell, hit him hard on the side of the head, pushed him into the corner of his desk, and then locked him in his cell, demonstrating that the risk of harm Freeman faced was realized. Dremel is therefore not entitled to summary judgment on this basis.

Drehmel also argues, albeit half-heartedly, that he is entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court reviews a defendant's motion for summary judgment based on qualified immunity, the court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017).

Here, as noted above, an inmate's right to be protected from violence at the hands of other inmates was clearly established at the time Freeman's cell door was unlocked. *See Moore*, 89 F.4th 582 at 591 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) and *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And for the reasons already explained, the evidence viewed in the light most favorable to Freeman would allow for a jury to find in his favor. Under these circumstances, Drehmel is not entitled to qualified immunity. *See Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) ("[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, viewed in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right.") (citing *Estate of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017)) Drehmel's summary judgment motion is therefore denied.

Finally, a few weeks before Drehmel moved for summary judgment, Freeman filed a motion to compel. Dkt. No. 44. Drehmel provided a detailed response, explaining that he had properly responded to each of Freeman's discovery requests. Freeman did not file a reply, from which the Court concludes Freeman was satisfied with Drehmel's explanations. The Court will therefore deny Freeman's motion to compel.

## NEXT STEPS

Freeman's claim will proceed to trial. Given the difficulty of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court will attempt to recruit a volunteer lawyer to represent Freeman at trial. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Freeman to be patient as it makes efforts to recruit a lawyer to represent him.

The process may take some time. The Court will promptly notify Freeman in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

**IT IS THEREFORE ORDERED** that Dremel's motion for summary judgment (Dkt. No. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that Freeman's motion to compel (Dkt. No. 44) is **DENIED**.

Dated at Milwaukee, Wisconsin on August 6, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
